## NEBRASKA NATIONAL BANK *v.* WALSH.

Opinion delivered November 17, 1900.

| 68 | 433 |
|----|-----|
| 69 | 65 |
| 68 | 433 |
| 78 | 353 |
| 68 | 433 |
| f87 | 379 |
| 68 | 433 |
| f90 | 56 |

LIMITATION OF ACTION—STATUTORY LIABILITY.—Sand. & H. Dig., ₹ 1347, providing that if the president and secretary of any corporation shall neglect or refuse to file the certificate required of them by ₹ 1337, *ib.*, they shall "jointly and severally be liable to an action, founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal," creates a statutory liability, and not a penalty, and the statute of limitations applicable to a suit to enforce such liability is the three-years' statute (Sand. & H. Dig., ₹ 4822) applicable to "all actions founded upon any contract or liability, expressed or implied, not in writing." (Page 436.)

Appeal from Pulaski Circuit Court.

JOSEPH W. MARTIN, Judge.

### STATEMENT BY THE COURT.

This is an action by appellant against appellee for the statutory liability arising upon the following sections of Sand. & H. Digest:

"Section 1337.   The president and secretary of every corporation organized under the provisions of this act shall annually make a certificate showing the condition of the affairs of such corporation, as nearly as the same can be ascertained, on the first day of January or July next preceding the time of making such certificate, in the following particulars, viz.:   The amount of capital actually paid in; the cash value of its personal estate; the cash value of its credits; the amount of its debts; the name and number of shares of each stockholder; which certificate shall be deposited on or before the 15th day of February

or August with the county clerk of the county in which said corporation transacts its business, who shall record the same at length in a book to be kept by him for that purpose."

"Section 1346. The certificates required by sections 1334, 1337, 1343 and 1344, except certificates of transfers of stock, shall be made under oath or affirmation by the person subscribing the same; and if any person shall knowingly swear or affirm falsely as to any material facts, he shall be deemed guilty of perjury, and be punished accordingly."

"Section 1347. If the president or secretary of any such corporation shall neglect or refuse to comply with the provisions of section 1337, and to perform the duties required of them respectively, the persons so neglecting or refusing shall jointly and severally be liable to an action, founded on this statute, for all debts of such corporation contracted during the period of any such neglect or refusal."

The defendant pleaded the statute of limitations. The case was tried before the court, which, upon the evidence, made the following finding:

"The court finds the facts as follows: The Southern Stave & Lumber Company was a corporation organized under the laws of Arkansas, November 3, 1890. H. J. Walsh, the defendant, was president thereof till May 23, 1893. January 26, 1893, the Southern Stave & Lumber Company made its note of $10,000 to the Western Manufacturing Company, due May 29, 1893, which was before maturity duly transferred to plaintiff bank. March 29, 1893, Western Manufacturing Company made its note to plaintiff bank for $10,000, due August 1, 1893, and assigned to it as collateral security the note of Southern Stave & Lumber Company for $13,002.70, executed to said Western Manufacturing Company on the 4th day of March, 1893, due October 7, 1893. None of these notes have been paid, but have been renewed from time to time, and the debts then created are represented by the notes in suit. The first certificate ever filed by the president, as called for by section 1337 of Sandels & Hill's Digest, was filed March 15, 1893, in the county court house of Pulaski county, Arkansas, the domicile of the corporation, and was not supported by affidavit, but contained only the cer-

tificate of the notary that it had been acknowledged as signed by the president and secretary.   This suit was filed January 13, 1896, and writ then issued more than two years after the right of action accrued.   On this state of facts the defendant became liable to plaintiff for the debts sued on, which had their inception during the time of his default in filing his certificate.   But the causes of action are barred by the statute of limitations of two years pleaded by the defendant, and the defendant is entitled to judgment, and it is so ordered."   Judgment was entered accordingly, and this appeal duly prosecuted.

*Rose, Hemingway & Rose*, for appellant.

The two-year statute of limitations on penal action (Sand. & H. Dig., § 4826) does not apply to this action.   The liability fixed by that statute is not a penalty.   146 U. S. 567.   Statutes creating a mere personal liability, however great, in favor of a person aggrieved, are not penal.   2 T. R. 148, 154, construing the English statute of limitation (re-enacted in this state).   31 Eliz. c. 5, § 5; 1 H. Blackst. 10; 2 W. Blackst. 1226; 9 Price, 301; 13 Pick. 94, 100, 101; 16 Pick. 128, 132; 20 Me. 218; 38 Me. 107; 31 Me. 528; 18 Me. 166; 2 Story, 432; 12 Ga. 117.   Debt was the proper action at common law for the enforcement of such a liability as in the case at bar.   16 Ala. 214; 1 Mason, 243; 13 Wall. 531; 18 *id.* 516; 1 Gall. 26; 11 Ohio, 130; 8 Pick. 514; 15 Ala. 452; 7 Porter, 284; 1 Head, 72; 18 Am. & Eng. Enc. Law, 274; Wood, Lim. § 25.   Indeed, the statute under consideration is remedial, rather than penal. 2 Morawetz, Corp. § 908; 3 Thompson, Corp. § 4164; 12 Ga. 106; 18 Ga. 909; 30 Ga. 580; 1 Shower, 353–4; 4 Carth. 233; Comb. 194; 4 Mod. 129; 12 Mod. 27; 3 M. & Selw. 434; 22 Pick. 495; 6 Gray, 338; 103 Mass. 160, 162. 118 Mass. 298; 14 Cal. 265; 34 Cal. 505; 53 Vt. 632, 639, 640; 45 N. W. 922; S. C. 29 Neb. 545; 47 N. W. 208; S. C. 30 Neb. 798; 23 N. E. 1007; S. C. 132 Ill. 197; 76 Fed. 695; Wood, Lim. 682, 683; 118 N. Y. 365, 378; 23 N. E. 544, 547; 51 N. W. 117; 101 U. S. 188; 146 U. S. 679; 8 Oh. St. 215, 222.

*Jno. M. Moore* and *J. A. Watkins*, for appellee.

The statute on which this action is based is penal, and the

action was barred by Sand. & H. Dig., § 4826. 115 U. S. 112, 122; 13 Abb. Pr. 225, 229; 233, 234; 64 N. Y. 173; 96 N. Y. 323; 101 U. S. 188; 12 Allen, 438; 3 Dutch. 166; 8 Oh. St. 215; 33 Md. 487; 23 Col. 472; 1 Robt. 383; 9 R. I. 541; Thompson, Corp. § 4164; 60 N. Y. 533; 17 N. Y. 458; 56 N. Y. 559; 11 Abb. Pr. (N. S.) 366; 10 Abb. Pr. 39; 35 N. Y. 412; 7 Robt. 391; 10 Hun, 65; 67 Barb. 9; 19 Mo, 327; 4 Biss. 327; 3 Col. 332; 12 Gray, 203; 30 N. J. Eq. 478; 7 Lans. 206; 60 N. Y. 396; 50 N. Y. 314; 27 N. J. L. 166; 103 N. Y. 242; 13 Abb. Pr. 225; 11 N. Y. S. 1049; 96 N. Y. 323; 64 N. Y. 173; 80 N. Y. 610; 83 N. Y. 156; 86 N. Y. 613; 103 N. Y. 242; 29 Pac. 185; 86 Fed. 85.

Wood, J., (after stating the facts.) The statute upon which this action was founded does not come within the scope of the statute of limitations of two years. That statute is as follows: 'All actions upon penal statutes, where the penalty, or any part thereof, goes to the state, or any county or person suing for the same, shall be commenced within two years after the offense shall have been committed, or the cause of action shall have accrued." Sand. & H. Dig., § 4826.

First. The prime object of every statute strictly penal is to enforce obedience to the mandates of the law by inflicting punishment upon those who disregard them; and, in statutes primarily and properly penal, the provision for punishment never rests in uncertainty, is never based upon a contingency. The general public is supposed to be injured by the violation of every penal statute, whether any special injury results to any particular individual or class of individuals or not. The punishment is provided as a sanction to the law, and is imposed for the public good, to deter others from the commission of like offenses. It would, therefore, be palpably incongruous to call a statute penal which did not contain a definite and certain provision for punishment in every case where the duties enjoined by it were ignored. Black, Law Dict. "Penal Statutes," "Penal Laws;" Bouvier, Law Dict. "Penal Statutes;" Potter's Dwarris on Stat. & Con. 74. Measured by these simple but infallible tests, the statute upon which this action was based is not penal. Here the behests of the law may be ignored re-

peatedly by the officers failing to file the certificate required, and still no unpleasant or severe consequences would be visited upon them unless there were creditors who had debts contracted with the corporation during the period of such disobedience. And even then the officers could be made to pay only at the instance of these creditors, and not by them if the debts had already been paid by the corporation. This shows conclusively that the public in general is not one whit interested in the enforcement of the duties enjoined by this statute, and that punishment of the officers for failure to perform the duties it prescribes is not the dominant idea. The duty which the statute enjoins upon, and the liability which it creates against, the officers is in favor of creditors. The measure of the liability is the amount of the debts which the corporation has incurred. There is no arbitrary amount fixed as a pecuniary mulct against the officers for each failure to file the certificate required. The amount is fixed, for compensation and indemnity, at the actual amount due the creditors. No additional sum is allowed them against the officers. They are only required to pay to prevent a loss which would otherwise result, directly or indirectly, from their neglect or failure. "By the principles of the common law," says Judge Thompson, "all men are answerable out of their estates for the debts which they contract by themselves or their agents. Now, when the legislature says that the managing officers of corporations shall not enjoy this granted immunity, provided  *  *  *  they fail to make and publish certain reports to apprise the public of its financial condition, it is no more than to say to them that these things which it requires of them are conditions precedent upon which alone they shall enjoy this granted immunity." 3 Thompson, Corp. § 4164; *National New Haven Bank* v. *Northwestern Guaranty Loan Co.* 61 Minn. 375. The liabilities created, and the remedies provided, by this statute are private and civil. There is nothing in the mere wording to give it even a penal semblance, which, of itself, is persuasive. We conclude, from these considerations, that the statute is not penal, but highly remedial, even when construed independent of the statute of limitations

Second.   But when viewed, as we must view it here, in connection with that statute, the correctness of the above conclusion seems all the more obvious.   The statute of limitation was modeled after the 31st of Eliz., c. 5, § 5.   According to the familiar rule, which we have often followed, where a statute is borrowed from another jurisdiction in which it has received definite construction, it is taken with the construction which has there been placed upon it.   Up to 1838, when our statute of limitation was passed, penal statutes in England were limited to actions brought either for the government by the public prosecutor, or to *qui tam* actions brought, not by the party injured or aggrieved, but by any one else who prosecuted both for himself and the queen—the common informer.   *Qui tam pro domino rege quam pro se ipso in hac parte sequitur.*   But statutes which gave the remedy to the party aggrieved were never regarded as penal, but as remedial, even though such party might have been given damages beyond indemnity or mere compensation.   *Woodgate* v. *Knatchbull,* 2 Term Rep. 148; *Ward* v. *Snell,* 1 H. Blackst. 10; *Bones* v. *Booth,* 2 W. Blackst. 1226.

But, whether our statute was borrowed from England or not, it is very similar to 31st of Eliz. and the distinction *supra,* between penal and remedial statutes, under it was correct then, and, under the peculiar wording of our statute, it is correct now; for, in our opinion, the phraseology of our statute indicates that the legislature had in mind only those statutes which imposed a pecuniary mulct for the doing or not doing of some act commanded or forbidden by the law for the benefit of the public, and for which pardon might be granted, and for which the government alone, or its designated agent, or the common informer, might bring an action; in other words, penal statutes in the strict and proper sense, and not statutes creating private rights and remedies.   The words, "or person," mean simply any other person who sues as a common informer, and not one having a special interest by reason of any injury or grievance. The words, "or cause of action shall have accrued," refer to those numerous penal statutes where the cause of action does not accrue to the state or county until the common informer

has been given an opportunity to sue for the penalty, or *vice versa*, or to cases where an opportunity is given to the offender to make compensation or restitution, before he can be proceeded against. In all such cases, of course, the cause of action accrues after the commission of the offense.

We are aware that there is quite an array of respectable authorities holding that statutes similar to the one sued on here are penal, and subject to the statute of limitations for suits based on penal statutes. See brief of counsel for appellee.

Much depends, of course, upon the language of the respective statutes as to the construction to be given them and the correct application of the decisions construing them. Many New York cases are cited as authority for holding our statute penal. The New York limitation statute is as follows: "An action upon a statute for a penalty or forfeiture when the action is given to the person aggrieved, or to that person and the people of the state, except where the statute imposing it prescribes a different limitation, shall be brought within three years." Other cases based on statutes embodying similar language are cited. We do not consider cases based upon such statutes as in conflict with the view we have expressed, it matters not in what language the opinions may be couched; for the words, "when the action is given to the person aggrieved," may have been considered by those courts as tantamount to a legislative determination that actions by aggrieved parties to recover on statutes similar to ours are penal.

With due deference to all authorities which hold that statutes similar to ours are penal, we are constrained to believe that such views are erroneous, and we fully agree with Mr. Morawetz that "it is not quite clear what the courts mean to express by saying that statutes of this character are penal, and that they impose upon the directors a penal liability." 2 Mor. Corp. § 908. The better view, as Judge Thompson says, is that expressed by the supreme court of Georgia, in the early case of *Neal* v. *Moultrie*, 12 Ga. 116. This opinion is usually clear and strong. The following authorities also support the view we have taken. *Goodridge* v. *Rogers*, 22 Pick. 495; *Adams* v. *Palmer*, 6 Gray, 338; *Norfolk* v. *American Steam Gas*

*Co.* 103 Mass. 160–162; *Nickerson* v. *Wheeler*, 118 Mass. 298; *Mokelumne Hill &c. Co.* v. *Woodbury*, 14 Cal. 265; *Davidson* v. *Rankin*, 34 Cal. 505; *Cady* v. *Sanford*, 53 Vt. 632; *Seeley* v. *Smith*, 45 N. W. 922; *Stanley* v. *Wharton*, 9 Price, 301; *Coy* v. *Jones*, 47 W. W. 208; *Wolverton* v. *Taylor*, 23 N. E. 1007; *Fitzgerald* v. *Weidenbeck*, 76 Fed. Rep. 695; *Huntington* v. *Attrill*, 146 U. S. 567.   The decision in the last case was put upon the ground that the statute under consideration was not penal in the international sense.   Still, what is said in the opinion decidedly supports the view we have expressed.   The authorities above cited are all found in the brief of counsel for the appellant, and we may say, in this connection, that it would be a work of supererogation to attempt to go beyond the reasoning and research of the most excellent briefs of counsel on both sides.   They seem to have exhausted the subject.   We have agreed with the counsel for appellant, and this opinion, couched in my own language, reflects, in the main, though in a less forceful and attractive form, the arguments which they have presented.

Having reached the conclusion that this is a statutory liability, and not a penalty, the statute of limitations would be that applicable to "all actions founded upon any contract or liability, expressed or implied, not in writing" (sec. 4822, Sand. & H. Dig.; Rev. Stat. c. 91, § 6); for, before the forms of action were abolished, debt was the proper action for enforcing a statutory liability of the kind under consideration.   *Lewis* v. *Stein*, 16 Ala. 214; *Bullard* v. *Bell*, 1 Mason, 243; *Stockwell* v. *U. S.* 13 Wall. 531; *Chaffee* v. *U. S.* 18 Wall. 516; *Cross* v. *U. S.* 1 Gall. 26; *Reed* v. *Davis*, 8 Pick. 514; *Rockwell* v. *State*, 11 Ohio, 130; *Strange* v. *Powell*, 15 Ala. 452; *Blackburn* v. *Baker*, 7 Port. 284; *Kelly* v. *Davis*, 1 Head, 71; 18 Am. & Eng. Enc. Law, 274; Wood, Limitations, § 25.

The finding of facts by the court being correct, there is no reason for sending the cause back for retrial.   The judgment of the circuit court is reversed for the error in finding the actions barred by the two years' statute of limitations, and judgment is entered here for the appellant.